IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| WEIL GROUP RESOURCES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 2:18-CV-130-D |
| | § | |
| SAM BURTON, in his official capacity | § | |
| as the Manager of the Amarillo | § | |
| Field Office of the Bureau of Land | § | |
| Management, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Weil Group Resources, LLC ("Weil") moves for a preliminary injunction to enjoin defendant Bureau of Land Management's ("BLM's") upcoming helium auction and sale and its implementation of the 2017 Pipeline Pressure and Helium Production for Limited Delivery Situations ("2017 Allocation Method").[1] For the reasons that follow,[2] the court denies the motion.

I

This lawsuit centers on BLM's planned auction and sale of crude helium from the

---

[1]Weil's preliminary injunction motion is before the court under the procedure permitted by Fed. R. Civ. P. 43(c) and is being decided on the papers, without an evidentiary hearing. *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

[2]Pursuant to Rule 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

Federal Helium Reserve (the "Reserve"), which BLM manages.  The Reserve currently supplies over 40% of U.S. domestic demand and 35% of global demand for crude helium.  BLM has administered the sale of crude helium to private helium refining companies through a competitive auction program since 1996.[3]  In 2013 Congress enacted the Helium Stewardship Act of 2013 ("HSA"), 50 U.S.C. 167 *et seq.*, "to allow greater competition and ensure a better price for the taxpayer."  Under the HSA, BLM is directed to sell and deliver federal helium to all producers for refining.  The HSA also requires BLM to "establish a schedule for the transportation and delivery of helium using the Federal Helium System that . . . ensures timely delivery of helium auctioned pursuant to Section 167d(b)(2)."  50 U.S.C. § 167c (West 2018).  The HSA establishes four stages of phase-out of the federal helium program.  In the current phase—Phase B—BLM must implement an auction process aimed at selling helium at market rates until its final helium auction on August 31, 2018.  The phase-out culminates in BLM's disposal of all federal helium assets by September 30, 2021.

In July 2017 Weil was one of three new private entities to participate in the Fiscal Year 2018 auction ("FY 2018 Sale").  Weil purchased 15 MMcf of helium at the auction and 6 MMcf of helium at the non-allocated sale, i.e., 21 MMcf in total.  As part of Weil's purchase, Weil and BLM entered into a "Contract for the Storage and Delivery of Helium"

---

[3]The Helium Privatization Act of 1996 mandated that BLM sell its stockpile of crude helium at a price sufficient to recoup the government's debt.  At that stage, only a few companies with refining capabilities on the Federal Helium System were able to benefit from the below-market price of federal helium.

("Helium Storage Contract").[4]

The Helium Storage Contract specifies how helium is distributed to federal users and storage contract holders in the case of a shortage, or when demand exceeds the delivery capacity of the Federal Helium System. In the case of a shortage, BLM places the Federal Helium System "on allocation." BLM grants priority access to federal helium users, as required by statute, *see* 50 U.S.C. § 167c(e)(2)(C) (West 2018), and regulates the amount of helium available to each refiner and storage contract holder.[5] Section 2.6(b) of the Helium Storage Contract provides, in pertinent part:

> [i]n the event of a shortage, the Authorized Officer will allocate the delivery capacity of the Federal Helium System in excess of the needs of Federal users among all parties storing helium in the Federal Helium System. That allocation will be calculated as a percentage of the remaining production capacity of the Federal Helium System according to the proportion of each storage contract holder's stored volume to the total volume stored by all storage contract holders as of the preceding October 1.

Ds. App. 3. The Helium Storage Contract also specifies that

> [t]he Authorized Officer may, in his sole discretion, change the allocation method when technical or operational considerations make such changes necessary or appropriate, but the Authorized

---

[4]Pursuant to its broad discretion granted by the HSA, BLM requires each private company that purchases or stores helium in the Reserve to execute a uniform storage contract. *See* 50 U.S.C. § 167a(a)(1) (West 2018) ("The Secretary may enter into agreements with private parties for the recovery and disposal of helium on Federal lands upon such terms and conditions as the Secretary deems fair, reasonable, and necessary.").

[5]When the system is not on allocation, parties may withdraw their helium without restriction.

>     Officer will consult with all storage contract holders before
>     making any such change.

*Id.*

On July 20, 2017, the day following the FY 2018 Sale, BLM conducted a meeting with all helium purchasers and provided the 2017 Allocation Method.[6] BLM also announced that the Federal Helium System would be on allocation for substantial portions of 2018.[7] The 2017 Allocation Method, *inter alia*, set a 200 Mcf cap on the amount of the helium withdrawal allocation a storage contract holder could roll over to the next month. BLM did not provide notice to the general public of its proposal for the 2017 Allocation Method, and it did not publish the 2017 Allocation Method as proposed rules in the *Federal Register*.

Weil and other producers who had purchased only small volumes of helium stored in the Reserve were dissatisfied with the 2017 Allocation Method. Weil maintains that a helium purchaser must be able to withdraw from the Reserve at least enough helium to fill an ISO container in order to engage in a commercially viable resale of that helium. Weil contends that, because an ISO container holds 1.1 MMcf of helium, Weil's monthly helium withdrawal allocation was insufficient to fill a single ISO container. Weil also maintains that

---

[6] The 2017 Allocation Method aimed to correct flaws in the previous 2012 Allocation Method. Because the 2012 Allocation Method did not limit the amount of helium withdrawal allocation a storage contract holder could roll over from month to month, storage contract holders were able to withdraw massive amounts of helium, which reduced pipeline pressure below the level necessary to sustain delivery operations.

[7] The shortage of helium supply was a result of supply interruptions, including, *inter alia*, Qatar's suspension of helium production around July 2017, and a lack of new sources for helium.

the 200 Mcf rollover cap prescribed by the 2017 Allocation Method hinders it from timely aggregating sufficient quantities of helium withdrawals to fill an ISO container and resell the helium. Weil posits that legacy refiners who have been purchasing large volumes of federal helium since before the HSA was enacted are minimally impacted by the 2017 Allocation Method because they represent a higher proportion of stored helium and are entitled to withdraw greater volumes of helium from the Reserve.[8]

Throughout fiscal year 2018, Weil and other small volume storage contract holders advocated different allocation methods to BLM. On July 4, 2018, prior to the Fiscal Year 2019 Auction scheduled for July 18, 2018, BLM formally adopted a new policy (the "2018 Allocation Method"), which Weil still considered unfavorable.

On July 10, 2018 Weil filed this lawsuit, challenging the 2018 Allocation Method, and moved for an emergency temporary restraining order ("TRO"). Weil requested that the court restrain the July 18, 2018 auction and sale and restrain BLM's implementation of the 2018 Allocation Method. After learning of Weil's failure to receive notice of the 2018 Allocation Method,[9] BLM rescinded the 2018 Allocation Method on July 13, 2018 "to ensure full stakeholder involvement and compliance with any and all processes, procedures, and notice

---

[8]Weil maintains that a company needs approximately 50 MMcf in stored volumes to withdraw one liquid helium ISO container per month, yet BLM auctions helium in 25, 15, and 5 MMcf lots. Weil posits that producers storing less that 50 MMcf are indefinitely prevented from withdrawing helium.

[9]Because BLM used an outdated list to notify storage contract holders of the new method, Weil and two other new storage contract holders did not receive notice of the change and have the opportunity to review the new language.

and comment requirements" required by the helium storage contracts. In response, Weil amended its complaint to challenge the 2017 Allocation Method on the same grounds.

Following a hearing, the court granted in part and denied in part Weil's motion for an emergency TRO. The court enjoined the July 18, 2018 auction, but it declined to enjoin BLM's implementation of the 2017 Allocation Method. The court also authorized defendants to publish notice of the planned FY 2019 helium auction and sale in the *Federal Register*, and it scheduled briefing on Weil's motion for a preliminary injunction.

In its preliminary injunction application, Weil seeks to enjoin the upcoming FY 2019 helium auction and sale and to enjoin "BLM from imposing and implementing Allocation Rules that prevent Weil and other small companies from timely access to their purchased helium volumes, pending BLM's adherence to the APA's informal rulemaking requirements and procedures to promulgate new Allocation Rules consistent with the HSA." P. Prel. Inj. Mem. 5-6. BLM and the other defendants[10] oppose the motion,[11] as does intervenor Linde Gas North America, LLC, a leading supplier of domestic helium.

II

To obtain a preliminary injunction, Weil must establish each of the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will

---

[10]The other defendants are Sam Burton, in his capacity as manager of the BLM Amarillo Field Office, and Aden Seidlitz, in his capacity as the BLM State Director.

[11]Defendants have combined their opposition response with a motion to dismiss under Rules 12(b)(1) and 12(b)(6). The motion to dismiss remains pending for separate decision after briefing is complete.

suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to Weil outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *E.g.*, *Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). "The decision whether to grant a preliminary injunction is within the discretion of the court, but it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden." *John Crane Prod. Solutions, Inc. v. R2R & D, LLC,* 861 F.Supp.2d 792, 794 (N.D. Tex. 2012) (Fitzwater, C.J.) (citing *Miss. Power & Light Co. v. United Gas Pipe Line,* 760 F.2d 618, 621 (5th Cir. 1985)). "A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.'" *Jones*, 122 F.Supp.2d at 718 (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light*, 760 F.2d at 621.

III

The court concludes that Weil has not made the required clear showing of a substantial likelihood that it will prevail on the merits.[12] Weil alleges that (1) the 2017

---

[12]The court recognizes that it granted Weil's emergency motion for a TRO. The instant ruling, however, is based on a more complete factual record and with the benefit of full briefing by both sides, as well as the participation of an intervenor.

Allocation Method was not promulgated pursuant to informal rulemaking requirements of 5 U.S.C. § 553; (2) BLM failed to conduct a regulatory flexibility analysis, as required by the Regulatory Flexibility Act ("RFA"); (3) BLM failed to consider factors required by the National Environmental Policy Act ("NEPA"); (4) the 2017 Allocation Method is arbitrary and capricious; and (5) the 2017 Allocation Method is contrary to congressional intent to create a competitive market under the HSA.[13]

A

Weil has not made a clear showing that the 2017 Allocation Method is subject to the requirements of 5 U.S.C. § 553.

1

The Administrative Procedure Act requires federal agencies to afford notice and an opportunity for comment incident to the issuance or repeal of substantive or legislative rules. *See Baylor Univ. Med. Ctr. v. Heckler*, 758 F.2d 1052, 1058 (5th Cir. 1985) (citing 5 U.S.C. §§ 551(5), 553)). But Congress has exempted from these requirements any "matter relating to agency management or personnel or to public property, loans, grants, benefits, or *contracts*." 5 U.S.C. §§ 553(a)(2) (emphasis added). "Because courts generally read exceptions from notice and comment narrowly, the substantive categories listed in section 553(a)(2) are operative only to the extent that any one of the enumerated categories is *clearly and directly* involved in the regulatory effort at issue." *Baylor Univ. Med. Ctr.*, 758 F.2d at

---

[13]Because BLM has rescinded the 2018 Allocation Method, the court considers only Weil's challenges to the 2017 Allocation Method.

- 8 -

1058 (citing *Humana of S.C., Inc. v. Califano*, 590 F.2d 1070, 1082 (D.C. Cir. 1978)) (internal quotation marks omitted) (emphasis added).

2

Even assuming *arguendo* that the 2017 Allocation Method is a rule, Weil has failed to clearly establish that BLM's adoption of the 2017 Allocation Method is not excepted from § 553 as a "matter relating to. . . contract." In considering this exception, the court asks only whether the 2017 Allocation Method is clearly and directly related to "contracts," as that term is used in § 553(a)(2).

The instant case is very similar to *Brown v. Housing Authority of City of Milwaukee*, 471 F.2d 63 (7th Cir. 1972). In *Brown* the Seventh Circuit addressed the question whether a circular issued by the U.S. Department of Housing and Urban Development ("HUD") was subject to the requirements of 5 U.S.C. § 553(b). *Id.* at 67-68. The panel held that the circular fell within the 5 U.S.C. § 553(a)(2) exception as a matter relating to contract. *Id.* The court reasoned that the circular was promulgated to supplement an annual contract between HUD and the local housing authority and thus was specifically exempted. *Id.*

In the present case, BLM set the 2017 Allocation Method pursuant to § 2.6(b) of the Helium Storage Contract, which provides that "[t]he Authorized Officer may, in his sole discretion, change the allocation method when technical or operational considerations make such changes necessary or appropriate, but the Authorized Officer will consult with all storage contract holders before making any such change." Plaintiffs have failed to provide a persuasive reason for the court not to consider the 2017 Allocation Method to be a matter

relating to contract. Because such a matter is exempt from the requirements of 5 U.S.C. § 553(b), Weil has not shown a substantial likelihood that it will prevail on its § 553 claim.

B

Nor has Weil shown a substantial likelihood that it will prevail on its claim under the RFA. The RFA requires agencies to incorporate "regulatory flexibility analysis"[14] at various stages of rulemaking under § 553. It provides: "*[w]henever an agency is required by section 553 of this title, or any other law, to publish general notice of proposed rulemaking for any proposed rule. . .* the agency shall prepare and make available for public comment an initial regulatory flexibility analysis." 5 U.S.C. § 603 (West 2018) (emphasis added). The RFA also requires that "*[w]hen an agency promulgates a final rule under section 553 of this title*, after being required by that section or any other law to publish a general notice of proposed rulemaking . . . the agency shall prepare a final regulatory flexibility analysis." 5 U.S.C. § 604 (West 2018) (emphasis added).

Because Weil has failed to clearly establish that the 2017 Allocation Method is not exempted from the requirements of § 553, as the court explains above, Weil has failed to show that the RFA's requirements apply. Accordingly, Weil has not shown a substantial likelihood that it will prevail on its RFA claim.

C

The court also concludes that Weil has not shown a substantial likelihood that it will

---

[14]This analysis includes, *inter alia*, a statement of the need and objectives of the rule. 5 U.S.C. § 604 (West 2018).

prevail on the merits of its claim under NEPA.

"A plaintiff seeking judicial review of an agency action under the APA must establish that the injury he complains of . . . falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *California Forestry Ass'n v. Thomas*, 936 F. Supp. 13, 20 (D.D.C. 1996) (internal quotation marks omitted). NEPA aims "to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321. "The Supreme Court has defined NEPA's zone of interest as the physical environment—the world around us so to speak." *Thomas*, 936 F. Supp. at 21 (internal quotation marks omitted). "The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions. Therefore a plaintiff who asserts *purely economic injuries* does not have standing to challenge an agency action under NEPA." *Nevada Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993) (internal citations omitted) (emphasis added).

In this case, Weil has only clearly demonstrated that its claims are based on *economic* harm, not *environmental* harm. Accordingly, because Weil has not shown that it has standing to challenge the 2017 Allocation Method under NEPA, it has not demonstrated a substantial likelihood that it will prevail on the merits of its NEPA claim.

D

Weil also alleges that BLM acted arbitrarily and capriciously in setting the 2017 Allocation Method.

Under the APA, agency action may be held unlawful and set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (West 2018). "The arbitrary and capricious standard is highly deferential." *Knapp v. Dep't of Agric.*, 796 F.3d 445, 453 (5th Cir. 2015) (quotation marks omitted). "[A]gency action is arbitrary and capricious 'only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ware v. U.S. Fed. Highway*, 2016 WL 1244978, at *5 (S.D. Tex. Mar. 30, 2016) (Rosenthal, J.) (citing *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993)).

In this case, Weil has failed to clearly demonstrate that BLM's 2017 Allocation Method is not entitled to deference, particularly where its decision involves a complex balancing of the needs of federal users and private purchasers in times of shortage. For example, Sam Burton ("Burton"), Field Manager of the Amarillo Field Office of the BLM, avers that the 200 Mcf rollover cap was implemented to allow BLM to maintain sufficient pressure in the helium pipeline. He states that, without the cap, "a storage contract holder could roll over large volumes they were unable to take delivery of that other companies could have delivered in the meantime." Ds. App. 30. Because Weil has not established that such an explanation is implausible and not a product of a difference in view, the court concludes that Weil has failed to show a substantial likelihood that it will prevail on the merits of its claim that the 2017 Allocation Method is arbitrary and capricious.

E

Finally, Weil asserts that BLM acted contrary to the HSA because the 2017 Allocation

Method fails to "ensure the timely delivery of helium auctioned" or to promote privatization of the federal helium market in a "competitive market fashion."

Based on the court's review of the current record, it concludes that Weil has not carried its burden to show that the 2017 Allocation Method is contrary to the HSA or congressional intent. For example, Weil makes no argument that the 2017 Allocation Method fails to provide for as timely delivery of helium as the pipeline pressure requirements allow. Accordingly, the court holds that Weil has failed to establish a substantial likelihood that it will prevail on the merits of this claim.

IV

Because Weil he has not satisfied one of the four essential requirements for obtaining a preliminary injunction, "the court need not address the remaining three factors." *Lee v. Verizon Commc'ns, Inc.*, 2012 WL 6089041, at *6 (N.D. Tex. Dec. 7, 2012) (Fitzwater, C.J.).

\* \* \*

For the reasons stated, the court denies Weil's motion for a preliminary injunction.

**SO ORDERED**.

August 15, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE